■ CONSOLIDATED RAIL CORPORATION, Respondent, v MASP EQUIPMENT CORP., Appellant. — Judgment, Supreme Court, Bronx County (Irwin Silbowitz, J.), entered November 24, 1982, amended by order (same court) entered May 17, 1983 which, *inter alia,* had (1) declared plaintiff's entitlement to and awarded immediate possession of a driveway easement, (2) ejected defendant therefrom, (3) granted a mandatory injunction to remove the fencing, equipment and other material obstructing plaintiff's use and enjoyment of the easement and, (4) granted a permanent injunction enjoining defendant from encroaching or trespassing upon plaintiff's property, modified, on the law, to delete paragraph VI of the amended judgment, which

had directed the payment to plaintiff of $1,000 per day for every day after the initial 45-day grace period that defendant maintained its equipment upon "the easement or any other part of Plaintiff's property", and otherwise affirmed, without costs or disbursements. The said order entered May 17, 1983, amending the judgment to provide that said payment of $1,000 per day be "liquidated damages" in lieu of "a penalty", as had been provided in the original judgment, is reversed, on the law, without costs or disbursements, and the motion to clarify the judgment and for punitive damages denied.

The action was brought to recover possession of a driveway easement which had been created on October 23, 1969 by an express grant from the then owner, Hunts Point Industrial Park, Inc., to plaintiff's predecessor, Penn Central Transportation Company. The easement was to provide access from East 149th Street into the Penn Central Oak Point Yard. Defendant, lessee of the property (from Hunts Point) over which the easement ran, had erected a fence in 1968, prior to the grant of the easement, and since then had used the area to store construction equipment and building material. The present fee owner, 900 Woolworth Redevelopment Corporation, which acquired the property from Federal Deposit Insurance Company, the successor to the bankrupt Franklin National Bank, following a mortgage foreclosure against Hunts Point, is not a party to the action and has expressed no interest in the outcome of the litigation.

In defending the action, MASP alleged that after the easement had been created and filed, the original parties (Hunts Point, Penn Central and Coca Cola, which had been contemplating the construction of a building adjacent to the easement) agreed to a modification of the easement by creating, at its easterly end, a "dog-leg" path over the property of Woolworth and Coca Cola to bypass the fenced area. It is alleged that the modification, agreed to in August 1971, served the interests of all parties by permitting MASP to have the use of the blocked area for storage of its construction equipment and Penn Central to have access to the yard through the "dog-leg" path. This, in turn, would accommodate Coca Cola, which could thereby use a portion of the original bypassed easement area for its trucks. The modification also worked to the advantage of Idaho Potato Packing Co., a tenant of the railroad which, by use of the "dog-leg", would gain access to the front entrance to its warehouse.

Plaintiff argues that its predecessor's representative at that meeting had no authority to bind the railroad to any modification and that the modification places plaintiff at the mercy of the adjoining property owners, thus posing a threat of loss of the

easement in the future. In any event, the "dog-leg" has been used by plaintiff and its predecessor in interest for the past 11 years. According to plaintiff, it first learned of defendant's encroachment upon its easement in July 1977 and demands were made for MASP to vacate same in June and July 1981. On February 3, 1982, this action was commenced for both ejectment and a mandatory and permanent injunction, directing defendant to remove the fence and its equipment and restraining defendant from such use in the future.

We find ourselves in agreement with Trial Term in its assessment of the legal issues respecting the entitlement of the parties to the disputed tract. As was held, an easement created by grant, express or implied, cannot be extinguished by nonuser alone for any length of time. (*Gerbig v Zumpano,* 7 NY2d 327; *Welsh v Taylor,* 134 NY 450; *Snell v Levitt,* 110 NY 595.) As held in these and other cases, an easement may only be lost by abandonment, conveyance, condemnation or adverse possession. Under the facts of this case, defendant may not claim entitlement to the disputed area through adverse possession since, on this record, it appears undisputed that the easterly end of the easement has never been opened, defendant having fenced the area in 1968, one year before the easement was created. (*See, Castle Assoc. v Schwartz,* 63 AD2d 481, 490; *Powlowski v Mohawk Golf Club,* 204 App Div 200, 204.)

However, we disagree with the direction by the trial court that plaintiff be awarded damages of $1,000 per day for each day after the expiration of the initial 45-day grace period. The court had initially imposed said sum as "a penalty" and, upon motion to clarify the judgment so as to refer to the monetary award as punitive damages, *sua sponte,* amended the judgment to provide for the payment to be made as "liquidated damages". Under the facts of this case, however, there was no basis for either. Liquidated damages is a contract remedy whereby the parties agree to an estimate of the extent of injury which would be sustained as a result of any breach (*see, Truck Rent-A-Center v Puritan Farms 2nd,* 41 NY2d 420, 424). A liquidated damages provision may not be implied and must be agreed to. (*Winkelman v Winkelman,* 208 App Div 68.) Clearly, it has no applicability to this case, brought for ejectment and injunctive relief. This action does not sound in contract. Moreover, plaintiff sought no monetary relief, either in its pleadings or by motion to amend at trial, and there was no proof that it had sustained any damage. On that basis, the trial court was not authorized to award exemplary damages. Accordingly, we have modified the amended judgment so as to delete the damage award. Concur — Ross, Bloom and Fein, JJ.

Sullivan J. P., and Kassal, J., dissent in part in a memorandum by Kassal, J., as follows: I agree that there was no basis here for any damage award, whatever appellation may have been used by the trial court. Plaintiff did not seek any monetary relief, either in its pleadings or at trial, and there was no proof that any damage had been sustained.

I also agree with my colleagues that, on this record, defendant could not acquire a right to use the disputed area through adverse possession. The record reflects that MASP erected the fence one year prior to the creation of the easement and, as a result, the easterly end of the easement had never been opened. As was observed by Justice Damiani, writing for the unanimous Appellate Division, Second Department, in *Castle Assoc. v Schwartz* (63 AD2d 481, 490): "where an easement has been created but no occasion has arisen for its use, the owner of the servient tenement may fence his land and such use will not be deemed adverse to the existence of the easement until such time as (1) the need for the right of way arises, (2) a demand is made by the owner of the dominant tenement that the easement be opened and (3) the owner of the servient tenement refuses to do so." (*See also, Powlowski v Mohawk Golf Club,* 204 App Div 200.)

However, I disagree with the majority's determination that there had not been an abandonment of the easement under the facts of this case. While there is a "strong policy against the extinguishment of easements created by specific grant" (*Castle Assoc. v Schwartz, supra,* at p 490) and, although nonuser alone, no matter how long, is insufficient, it is well established that an easement created by grant, whether express or implied, may be extinguished, *inter alia,* by abandonment (*Gerbig v Zumpano,* 7 NY2d 327; *Welsh v Taylor,* 134 NY 450). As was observed in *Gerbig v Zumpano* (*supra,* at p 331): "to prove an abandonment it is necessary to establish both an intention to abandon and also some overt act or failure to act which carries the implication that the owner neither claims nor retains any interest in the easement * * * Furthermore, acts evincing an intention to abandon must be unequivocal. They must clearly demonstrate the permanent relinquishment of all right to the easement".

Whether an easement has been extinguished poses an issue of law for the court (*Snell v Levitt,* 110 NY 595, 604) and the question in each case is one of intention, depending upon the facts adduced. Thus, where the parties ceased to use a common driveway easement which had been created by instrument and erected a fence and shrubbery and constructed other improvements, it was held that the parties had "manifested unequivocally their intention to abandon the easement." (*Arena v Prisco,* 81 NYS2d 627, 630.)

As applied here, there is no question on this record that a "dog-leg" path was created around the disputed tract and was actually used by plaintiff in lieu of the original easement for an 11-year period prior to institution of suit. There was testimony as to the modification by Robert Campbell, who, at that time, had been employed as director of engineering for Coca Cola Bottling Company and who represented his company at the meetings with representatives of Hunts Point and Penn Central. Even assuming that the Penn Central representative, Clyde Nichols, lacked express authority to bind his principal, there is, at a minimum, a sufficient basis here to find apparent authority. (*Matter of Enright v Asplundh Tree Expert Co.*, 271 App Div 847, *affd* 297 NY 452.)

In any event, the continued use of the "dog-leg" over a continuous and extensive 11-year period should suffice to amount to a ratification of the modification. Moreover, there is no dispute on this record that the "dog-leg" path, which had been previously paved, was repaved by plaintiff in 1980. There was testimony on this score by defendant and no proof to the contrary was offered. In fact, the land surveyor who appeared as plaintiff's witness denied any knowledge as to who had paved the "dog-leg" path. Thus, from the evidence, it was established that for 11 years, plaintiff used and, in 1980, repaved the "dog-leg" around the disputed area, sufficient overt acts to evince an intention to abandon and relinquish the original easement. Whether plaintiff acquired any right to or easement in the area covered by the "dog-leg" as against the fee owners, by prescription or otherwise, is not at issue here.

Accordingly, I would reverse and vacate the judgment, deny injunctive and ejectment relief and declare that plaintiff's easement had been extinguished by abandonment, by reason of its intention and acts inconsistent with the use of the easement, namely, (1) the creation and use of the "dog-leg" modification, (2) the repaving of the "dog-leg" in 1980, (3) the failure to object to the placement and continued maintenance of the fence and other obstructions directly across the path of the original easement and (4) the passage of time.